IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| STEPHANIE DIENNE WALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:21CV726 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Stephanie Dienne Wall ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB on August 16, 2019, and SSI on October 28, 2019, alleging a disability onset date of August 1, 2019 in both applications. (Tr. at 15, 217-24)[1] Her applications were denied initially (Tr. at 69-90, 120-39) and upon

---
[1] Transcript citations refer to the Sealed Administrative Record [Doc. #6].

reconsideration (Tr. at 91-116, 142-60). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 161-62.) On November 23, 2020, Plaintiff, along with her attorney and an impartial vocational expert ("VE"), attended the subsequent telephonic hearing. (Tr. at 15.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 26), and, on August 5, 2021, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her amended alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 17.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> essential hypertension, migraine headache with aura, bilateral biceps tendinopathy, and left shoulder impingement and rotator cuff tear[.]

(Tr. at 18.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 19-20.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with further limitations. Specifically, the ALJ found that Plaintiff can

> occasionally operate hand controls, push, and pull with the left upper extremity. She can never reach overhead, but can reach occasionally in all other directions, with the left upper extremity. She can frequently climb ramps and stairs, but

5

> never climb ladders, ropes, or scaffolds. She can frequently balance, but never crawl. She can frequently work around unprotected heights and moving mechanical parts.

(Tr. at 20.) At step four of the analysis, the ALJ determined that all of Plaintiff's past relevant work exceeded the above RFC. (Tr. at 24.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the VE regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 25-26.)

Plaintiff now raises two challenges to the ALJ's decision. First, Plaintiff argues that she failed to properly resolve an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). Second, Plaintiff raises constitutional challenges regarding the structure of the Social Security Administration ("SSA"), and also challenges the validity of the appointment of the ALJ and Appeals Council Judges. After a thorough review of the record, the Court agrees that Plaintiff's first contention merits remand. In light of this findings, the Court need not reach Plaintiff's additional argument at this time.

Plaintiff challenges the ALJ's reliance on the vocational expert's testimony at step five of the sequential analysis. Specifically, the Plaintiff contends that the Vocational Expert's testimony conflicted with the DOT, but that the ALJ failed to obtain a reasonable explanation for the conflict.

In Pearson v. Colvin, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit clarified the steps an ALJ must take to identify and resolve apparent conflicts between a vocational expert's testimony and the DOT. Specifically, the Fourth Circuit held that, if an expert's testimony apparently conflicts with the DOT, the expert's testimony can only provide substantial

6

evidence to support the ALJ's decision if the ALJ received an explanation from the expert explaining the conflict and determined both (1) that the explanation was reasonable and (2) that it provided a basis for relying on the expert's testimony rather than the DOT. Pearson, 810 F.3d at 209-10; see also Thomas v. Berryhill, 916 F.3d 307 (4th Cir. 2019).

In the instant case, Plaintiff contends that the vocational testimony on which the ALJ relied at step five of the sequential analysis conflicted with the DOT as to all of the identified jobs. Specifically, the ALJ identified three representative jobs available in the national economy that Plaintiff could perform: Marker (209.587-034), Cashier II (211.462-010), and Ticket Seller (211.467-030). (Tr. at 25.) The positions of Marker and Cashier II, as defined by the DOT, require frequent reaching, with "frequent" further defined as occurring "from 1/3 to 2/3 of the time," and with "reaching" further defined as "[e]xtending hand(s) and arm(s) in any direction," while the position of Ticket Seller requires constant reaching. However, both Plaintiff's RFC and the hypothetical question based upon it included a restriction to no overhead reaching with the left upper extremity and only occasional reaching in all other directions with the left upper extremity. (Tr. at 20, 59.)

As Plaintiff correctly notes, the Fourth Circuit's decision in Pearson closely mirrors the facts in the present case. There, "[t]he ALJ found [that the claimant's] non-dominant arm could only occasionally reach upward," but for all three of the jobs cited by the VE, "the [DOT] list[ed] frequent reaching as a requirement." Pearson, 810 F.3d at 210. The Fourth Circuit further explained that, "[a]lthough the [DOT] does not expressly state that the occupations identified by the [VE] require frequent bilateral overhead reaching, the [DOT's] broad definition of 'reaching' means that they certainly may require such reaching." Id. at

7

211.[4]  Therefore, the Fourth Circuit concluded the ALJ failed to identify or resolve the apparent conflict, and remand was required. Id. at 211-12.

In the present case, Defendant seeks to distinguish Pearson, and contends that the ALJ obtained a reasonable explanation from the vocational expert "regarding the conflict between his testimony and the DOT regarding overhead reaching." (Def.'s Br. [Doc. #14] at 2.) Defendant notes that at the close of the vocational expert's testimony, the ALJ and the expert engaged in the following exchange:

> Q [H]as your testimony been consistent with the DOT and its companion publications, except, of course, when I asked for your opinion on absences and off task?
>
> A It, it has, except for, for those things that are not addressed by the DOT, and those things are—that testimony is based upon my professional observation and experience.
>
> Q Were there any other part of my hypothetical, other than the absences and time off task, that would have been based on observation and experience?
>
> A Overhead reaching and—particularly, I don't remember. I was not—
>
> Q Does the DOT differentiate between use of the right and left hand differently?
>
> A No, it does not. It, it does not. It does no—it does, on occasion, refer to using both hands, but very occasionally. So, you could sort of say that it, it does refer to that.

(Tr. at 63-64.) The ALJ's decision then included the following analysis and explanation:

> Pursuant to SSR 00-04p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. However, the Dictionary of Occupational Titles does not differentiate between reaching overhead and reaching in other directions. The

---

[4] As noted in Pearson, "[t]he [DOT] defines reaching as '[e]xtending hand(s) and arm(s) in any direction.'" 810 F.3d at 210 (quoting Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App'x C ("Physical Demands"), § 8 (U.S. Dep't of Labor 1993) ("SCO")).

vocational expert testified that she based her testimony regarding such limitations on her education and experience in the field.

(Tr. at 25-26.)

In considering the sufficiency of the testimony and ALJ explanation on any apparent conflict, the Court notes that it is helpful to separately consider the two specific restrictions in the RFC that are at issue here. First, the ALJ limited Plaintiff to <u>never reaching overhead</u> with the left upper extremity. (Tr. at 20.) Second, the ALJ limited Plaintiff to only <u>occasionally reaching in all other directions</u> with the left upper extremity. (Tr. at 20.) The ALJ explained that Plaintiff's left shoulder impingement and rotator cuff tear, which required surgery and was not progressing as expected, resulted in pain and limited range of motion with related functional limitations. (Tr. at 21-23.)[5] As a result, the ALJ included the additional limitations to "never reaching overhead, but being able to occasionally reach in all other directions" with the left upper extremity. (Tr. at 23.) The ALJ further noted that "[b]ased on the lack of improvement and continued reduced range[] of motion noted by her surgeon, <u>occasional reaching in other directions</u> has been added as a limitation." (Tr. at 24 (emphasis added).) Thus, the ALJ specifically included both a limitation to no overhead reaching with the left arm, and also a separate limitation to only <u>occasional reaching</u> in all other directions with the left arm.

Notably, during the hearing, the vocational expert testified that an individual limited to only occasional use of the left upper extremity for reaching in front and laterally would be

---

[5] An MRI prior to Plaintiff's surgery reflected "[c]omplete tear with retraction to 12:00" and "[a]nterior coracoid impingement." (Tr. at 365.) Several months after surgery, examination reflected a limited range of motion, with forward flexion to only 90 degrees, and external rotation to 60 degrees, and a notation that she was "not progressing as well as expected." (Tr. at 392.)

9

precluded from any sedentary work because "that would interfere with her manual dexterity, and she would not possess manual dexterity without having full use of her left upper extremity. So, there would be no sedentary work." (Tr. at 63.) In addition, Plaintiff testified that she was still using a sling for her left arm three days per week, and the ALJ asked the expert if it would make any difference in the hypothetical if the individual "had their left, nondominant arm in a sling; and so, they basically had no use of it during the workday." (Tr. at 61.) The expert responded that only a small number of positions would be available in the national economy, and the ALJ concluded that the vocational testimony "would give [her] a basis to find that there would not be jobs in significant numbers with that set of limitations." (Tr. at 62.) In light of all of this testimony, whether substantial evidence supports the vocational expert's finding that the jobs identified at step five can, in fact, be performed given Plaintiff's limited, but not preclusive, ability to use her left arm remains pivotal to the outcome of her disability claim. The relevant issues are whether the ALJ sufficiently (1) identified the apparent inconsistency between Plaintiff's RFC and the reaching requirements of the jobs identified at step five, (2) asked the vocational expert to explain the apparent conflict, and (3) received a "reasonable explanation for any discrepancy." See Pearson, 810 F.3d at 209.

As noted above, the potential conflicts here relate to two aspects of the RFC: the limitation to "never reach overhead" with the left arm, and the limitation to "reach occasionally in all other directions" with the left arm. Ultimately, a comparison of post-Pearson cases in this District supports the conclusion that the ALJ may have sufficiently identified and resolved the apparent conflict regarding the limitation to "never reach overhead," but did not address or resolve the apparent conflict between the DOT and the

10

limitation to only "reach occasionally in all other directions." See, e.g., Allen v. Berryhill, No. 1:17CV277, 2018 WL 2025666, at *6 (M.D.N.C. May 1, 2018); Crouse v. Saul, No. 1:18CV269, 2019 WL 4015553, at *4 (M.D.N.C. Aug. 26, 2019).

In Crouse, the Court determined that remand was required where "the VE did not identify the specific conflict in question. Instead, when queried, the VE stated that her testimony was 'somewhat outside the DOT and the companion publications just with the differentiating with the sit and stand as well as the breakdown of reaching right versus left.'" Id. The expert further stated that her testimony was "consistent with [her] 25 plus years of doing [inaudible], talking with employers, doing jobs, being in the industry." Id. As the Court explained in Crouse,

> [i]t is far from clear what this [language] means. While the quoted testimony appears to be an effort on the part of the VE to identify some general conflict between her testimony and the DOT regarding reaching, such a statement is simply too vague and ambiguous to fairly constitute an identification of the specific apparent conflict raised by Plaintiff here. As a result, the Court cannot determine if the ALJ's step five finding is supported by substantial evidence.
>
> Nor was the VE's explanation for the unidentified reaching conflict susceptible to judicial review. As noted, the VE apparently tried to reconcile the fact that her testimony was "somewhat outside the DOT" as to the "breakdown of reaching right versus left," by stating that it was "consistent with [her] 25 plus years of doing [inaudible], talking with employers, doing jobs, being in the industry." (Tr. at 66.) Again, however, it is far from clear what all of this means. There is no "breakdown" regarding "reaching right versus left" in the VE's testimony or in the ALJ's decision. While a VE may resort to personal experience to explain why her opinion remains reliable despite an apparent conflict with the DOT, see, e.g., Allen v. Berryhill, No. 1:17CV277, 2018 WL 2025666, at *6 (M.D.N.C. May 1, 2018) (Auld, M.J.), adopted Slip Op. (M.D.N.C. May 23, 2018) (Biggs, J.), that explanation must itself be stated clearly enough to be susceptible to judicial review.
>
> Moreover, the ALJ did not provide any analysis to help explain how this testimony was interpreted and relied upon. In this regard, Pearson requires the ALJ to determine both (1) that the explanation was reasonable and (2) that it

11

provided a basis for relying on the expert's testimony rather than the DOT. Pearson v. Colvin, 810 F.3d at 211. Here, the ALJ did not address the DOT conflict at all, and instead found that "the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT)." (Tr. at 24.) Thus, the ALJ did not resolve the ambiguity in the VE's testimony, or otherwise identify the conflict and determine that there was a reasonable basis for relying on the VE's testimony rather than the DOT.

Crouse, 2019 WL 4015553, at *5.

In the present case, when asked what part of the ALJ's hypotheticals were answered based on "observation and experience" rather than the DOT, the VE identified overhead reaching, but did not mention the limitation to occasional reaching with the left upper extremity. (Tr. at 64.) The ALJ then asked whether "the DOT differentiate[s] between use of the right and left hand differently," and the vocational expert responded, after some equivocation, that "you could sort of say that it, it does refer to that." (Tr. at 64.) In other words, the expert never identified Plaintiff's ability to reach only occasionally with the left arm as conflicting with the DOT, let alone resolved the discrepancy between his testimony and the frequent or constant reaching requirements of the three jobs he identified at step five. In fact, neither the vocational expert nor the ALJ even mentioned the reaching requirements of the jobs in question.

Defendant in her Response Brief addresses only the apparent conflict regarding the limitation to "never reach overhead" with the left arm, but does not address the limitation to "reach occasionally in all other directions" with the left arm. Defendant argues that the vocational expert identified the apparent conflict regarding "overhead reaching," and further notes that the ALJ specifically included an explanation regarding overhead reaching, explaining that "the Dictionary of Occupational Titles does not differentiate between reaching overhead

12

and reaching in other directions [and] the vocational expert testified that she based her testimony regarding such limitations on her education and experience in the field." (Tr. at 26.) Defendant's contentions on this point are reasonable, and if the only limitation in the RFC were a limitation to overhead reaching, or if the jobs identified by the vocational expert were otherwise consistent with a limitation to occasional reaching, then no further explanation would be required. However, the ALJ also included a limitation to only <u>occasional reaching in any direction</u> with the left arm, but then relied on jobs with frequent or constant reaching requirements. The position of Marker requires <u>frequent</u> reaching, handling, and fingering; the position of Cashier II requires <u>frequent</u> reaching, handling, and fingering; and the position of Ticket Seller requires <u>constant</u> reaching, handling, and fingering. The vocational expert testified that an individual limited to only occasional use of the left arm and hand "would not possess manual dexterity" and could not do any sedentary work, but the vocational expert did not identify or explain the apparent conflict between the limitation to <u>occasional reaching</u> of the left arm and the DOT position descriptions involving frequent or constant reaching. As noted above, the ALJ asked, "Does the DOT differentiate between the use of the right and left hand differently?" and the vocational expert testified, "No, it does not. It, it does not. It does not – it does, on occasion, refer to using both hands, but very occasionally. So, you could sort of say that it, it does refer to that." (Tr. at 64.) As in <u>Crouse</u>, this explanation is not at all clear, and the vocational expert never specifically acknowledged the apparent conflict between the DOT's descriptions for those jobs as involving frequent or constant reaching in any direction and the hypothetical's restriction to only occasional reaching in any direction with the left arm. Even more importantly, the ALJ did not resolve the ambiguity in the VE's

13

testimony, or otherwise identify the conflict and determine that there was a reasonable basis for relying on the VE's testimony rather than the DOT with respect to the limitation to only occasionally reaching with the left arm in all directions. The ALJ instead addressed only the apparent conflict related to never <u>reaching overhead</u> with the left arm. (Tr. at 25-26.) The Commissioner's Brief likewise addresses only the limitation to no overhead reaching, so it is not clear how the ALJ or the Commissioner would interpret or apply the vocational expert testimony with respect to the limitation to only <u>occasionally reaching with the left arm in all directions</u>. Accordingly, the Court concludes that the ALJ failed to identify and resolve an apparent conflict at step five of the sequential analysis, specifically the conflict between the RFC limitation to only occasionally reaching in all directions with the left arm and the DOT job descriptions requiring frequent or constant reaching in all directions. Therefore, in light of the Fourth Circuit's direction in <u>Pearson</u>, and consistent with the similar scenario in <u>Crouse</u>, remand is required so that the impact of Plaintiff's limitations in her left arm can be fully addressed, and the apparent inconsistency with the DOT can be explained and resolved.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. # 13] should be DENIED, and Plaintiff's Motion for a Judgment Reversing and Remanding the Decision of the Commissioner of Social Security [Doc. # 8] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 21st day of February, 2023.

                                            /s/ Joi Elizabeth Peake
                                        United States Magistrate Judge